# Pennsylvania Railroad Company's Appeal.

1. Where one of two parties who are equally innocent of actual fraud must lose, the one whose misplaced confidence in an agent or attorney has been the cause of the loss shall not throw it on the other.

2. Where the owner of stock intrusts the certificates with blank powers of attorney to an agent for safe-keeping, who fraudulently transfers them to a third party, who in turn, without knowledge of the fraud, has them transferred to himself, the owner cannot recover from the corporation for the loss.

3. A corporation is the trustee of its stockholders, and is bound to proper vigilance and care that they may not be injured by unauthorized transfers of stock.

4. Where therefore the signatures to powers of transfer were genuine, yet it appearing that at the time the transfer was made they were thirteen years old, this fact should have put the corporation upon inquiry, and it was not justified in making the transfer unless it had first ascertained if the powers had been revoked.

[Pennsylvania Railroad Co.'s Appeal.]

January 11th 1878.    Before AGNEW, C. J., SHARSWOOD, MER-
CUR, GORDON, PAXSON, WOODWARD and TRUNKEY, JJ.

Appeal from the decree of the Court of Common Pleas, No. 1, of
*Philadelphia county :*  Of January Term 1876, No. 202.  In equity.

Bill in equity filed by Mary Fearon, the executrix and legatee un-
der the will of Samuel P. Fearon, deceased, against John V. Creeley,
B. Schultz, and the Pennsylvania Railroad Company.    Creeley
was duly served, but made no answer to the bill, nor was he repre-
sented by counsel.    The case was, however, proceeded with as if
he had been present or represented.    Schultz and the Railroad
Company filed separate answers.    It appeared that Samuel P. Fea-
ron died in August 1865, at which time he was possessed of twenty-
three shares of Pennsylvania Railroad stock.    In 1860 said de-
cedent pledged thirteen of said shares as collateral security for a
loan, and at the same time signed a blank power of attorney on the
back of the certificates, as follows :—

"Know all men by these presents, that I, the undersigned, for
value received, do hereby irrevocably constitute and appoint ———
———— to be my true and lawful attorney, for me and in my name
and behalf to sell, assign, and transfer unto ———— ————, or to
any other person, or persons, ———— shares of the capital stock of
the Pennsylvania Railroad Company.    And further, one or more
persons under ———— ————, to substitute with like power.

In witness whereof, I have hereunto set my hand and seal, this
twenty-fifth day of January 1860.

SAMUEL P. FEARON.    [SEAL.]

Witnesses present:
    S. L. SMITH,
    WM. DONOVAN."

At the maturity of the loan it was paid by decedent, and said
shares were returned to him, and remained in his possession up to the
time of his death.    The powers of attorney were never cancelled.
The plaintiff, Mary Fearon, was the executrix of decedent's will,
and in 1871 she took these certificates of stock, with other bonds,
and deposited them for safe-keeping with Creeley, who, at that
time, was a lawyer in good standing, and was acting as the legal
adviser of the executrix, and had been for several years collecting
the dividends of the estate.    In 1870, Creeley, pretending to be
the agent of Fearon, applied to Schultz for a loan of $1000, and
pledged these shares of Pennsylvania Railroad stock as collateral
security therefor, giving to Schultz two judgment notes, to which
he forged the name of Fearon, and delivering to him the certifi-
cates of stock, with the blank powers of attorney.    Creeley con-
verted the money to his own use.    The notes not being paid at ma-
turity, Schultz, in 1872, went to the office of the railroad company
and had the stock transferred to himself, and he subsequently dis-

5 NORRIS—6

posed of the same. The clerk of the company, it appeared, made no inquiries, but directed Schultz to write his name on the blank powers, and the shares of stock were transferred to him. The clerk who made the transfer was dead at the time this bill was filed. It seems that the company made no effort to discover whether the letters of attorney were still unrevoked. It relied upon the fact that the letters were irrevocable, and contended that it was not responsible, inasmuch as these irrevocable letters had affixed thereto the genuine signatures of S. P. Fearon, and that the transfers were made in the ordinary course of business and in the utmost good faith. The bill alleged that the company was negligent, in not making the proper inquiries as to whether Schultz had authority to write his name in the blank powers; that the long time that had elapsed since their execution, namely, thirteen years, should have put the company upon inquiry to ascertain whether Fearon was still living, and that the loss occurred from their failure to so inquire. The cause was referred to a master, who reported a decree against all three defendants. The court below confirmed the decree as to Creeley, reversed it as to Schultz, and made a decree that the railroad company should issue to the plaintiff "duplicate originals of the certificates of stock so transferred," from which decree the company took this appeal.

*Chapman Biddle*, for appellants.—A decree should have been made against Schultz, who, if there was any wrong done to plaintiff by the company, was the real author of it. It was he dealt with Creeley as the agent of Fearon; it was he who was bound to inquire into the extent of Creeley's authority, and it was he who procured the transfer. While it is true that a corporation, innocently permitting a transfer upon a forged power of attorney, would be bound to transfer an equal quantity of its stock to the injured party or pay its value, yet where the negligence of a stockholder misleads a corporation to believe that a transfer of stock, which was in fact fraudulent, had been made with the assent of the stockholder, it is not liable: Coles *v.* Bank of England, 10 Ad. & Ell. 437; Duncan *v.* Luntley, 2 Mac. & G. 30. In the present case the powers were genuine, and were signed in blank as far back as the 25th of January 1860, and when they had served a temporary purpose of Fearon, were kept by him until the day of his death, in August 1865, in the same condition, without, as ultimately has appeared, any necessity whatever. If there has been negligence anywhere, that negligence arose with Fearon and was continued by his executrix. The plaintiff voluntarily deposited with Creeley, one of the defendants, these and other certificates of stock, with the identical genuine powers; or, in other words, negligently perpetuated the very means of committing the fraud of which she now complains. The company had no knowledge of the

death of Fearon, and the transfer was made in the ordinary course of business, upon genuine powers of attorney.

*John A. Scanlan*, for appellee.—The bare fact of the loss of a certificate endorsed in blank is not evidence of such culpable carelessness as would enable the finder to transfer the ownership: Biddle *v.* Bayard, 1 Harris 150.

The company is bound to see that the party making the transfer has the legal title thereto, and the right to do so. The mere fact that the signatures were genuine is not conclusive, for the certificates may have been lost or stolen, and if so, the company could not deprive the real owner of his property by transferring it: Bayard *v.* Farmers' and Mechanics' Bank, 2 P. F. Smith 232.

In fact it is the duty of the company to prevent the entry of a transfer in their books until satisfied that the person who claims to be allowed to make it is duly authorized so to do. Were the law otherwise, the whole property of every stockholder would be at the mercy of the company's clerks: Grant's Law of Banking, page 391, 3d edition.

A power of attorney is revoked by death, however irrevocable its terms, for a valid act cannot be done in the name of a dead man: Frederick's Appeal, 2 P. F. Smith 338; Hunt *v.* Roumanier's Exrs., 8 Wheat. 174; Lightner's Appeal, 1 Norris 301.

Mr. Justice SHARSWOOD delivered the opinion of the court, January 21st 1878.

There is no doubt that a corporation is a trustee of its stockholders, and is bound to proper vigilance and care that they may not be injured by unauthorized transfers of their stock: Bayard *v.* Bank, 2 P. F. Smith 232; and there is no doubt, we think also, that, had the certificates of stock, which are the subject of the controversy, been lost or stolen from the possession of the appellees, the appellants would have been responsible. Though the signature of Samuel P. Fearon to the powers to transfer was genuine, yet they had actually been revoked by his death, and, in fact, before; and the circumstance that at the time the transfer was permitted they were thirteen years old, was enough to arouse suspicion and inquiry; and it is necessarily to be presumed that if proper inquiry had been made the truth would have been elicited. The clerk by whom the transfer was permitted, unfortunately, is dead, and we are without evidence on the subject. The onus, however, of showing due diligence was on the corporation appellants, and they must suffer from the want of the evidence.

But there certainly was negligence on the part of the appellee. As executrix she placed the certificates in the hands of Creeley, as her attorney, with the blank powers endorsed uncancelled. Thus by her act he was enabled to commit this fraud. The equities of

the respective parties are not equal. Where one of two parties, who are equally innocent of actual fraud, must lose, it is the suggestion of common sense, as well as equity, that the one whose misplaced confidence in an agent or attorney has been the cause of the loss shall not throw it on the other. As Judge King has well expressed this principle in the Bank of Kentucky *v.* Schuylkill Bank, 1 Parsons's Eq. Rep. 248: "The true doctrine on this subject is that, where one of two innocent persons is to suffer from the tortious act of a third, he who gave the aggressor the means of doing the wrong must alone bear the consequences of the act." The appellee in this case selected the attorney. She had entire confidence in him. She placed these certificates, with the blank powers, in his hands. He proved unworthy of the trust reposed in him. . He perpetrated a gross fraud by which he converted this property to his own use. That he was an attorney at law in good standing does not help her case. He added to the crime of which he was guilty that of moral perjury, by the violation of his official oath. On what principle of equity can she be allowed to throw off from herself on to the appellants the loss which has resulted from the dishonesty of her own agent? This important element in the case was entirely overlooked by the learned master and the court below; and we think, applying it to the undisputed facts of the case, the appellee's bill as to the appellants ought to have been dismissed.

> Decree reversed, and now the bill of the appellee, Mary Fearon, is dismissed as to the Pennsylvania Railroad Company, with costs, and the costs of this appeal.