# Thomas Robb *v.* The Pennsylvania Company for Insurance on Lives and Granting Annuities, Appellant.

*Banks and banking—Forgery—Rubber stamp.*

The mere fact that a depositor, without knowledge of his bank, had a rubber stamp made which was a substantial facsimile of his bank signature does not, irrespective of depositor's negligence, relieve the bank from loss which occurs by reason of the unauthorized signing by means of such stamp, by a third person of the depositor's signature to a check.

*Negligence—Rule as to innocent parties.*

The rule governing loss by one of two innocent parties has no application in cases where the two persons are not equally without fault, but where one owes a duty to the other, to do or to refrain from doing, a particular thing, and has failed in the performance of his duty.

*Negligence—Forgery by a facsimile stamp—Proximate cause.*

It is not negligence per se for a depositor to have in his possession a rubber stamp, a facsimile of his signature. He is bound to use it and keep it with prudent care so as to secure it against unlawful use by others, but it cannot be said that his mere possession of the thing was the proximate cause of the mispayment of money to one who unlawfully possessed himself of it and used it to commit forgery.

*Proximate cause—Negligence—Non-negligent act.*

In determining what is proximate cause the true rule is that the injury

must be the natural and probable consequence of the negligence, such a consequence as, under the surrounding circumstances of the case, might and ought to have been foreseen by the wrongdoer as likely to flow from his act. The same rule, and for a stronger reason, applies when it is sought to hold one liable for the consequences of a lawful and non-negligent act.

*Negligence—What constitutes—Province of court and jury.*

There are cases in which the court can determine that certain omissions constitute negligence, but they are exceptional, those in which the precise measure of duty is determinate, the same under all circumstances. What constitutes negligence when the standard shifts, not according to any certain rule, depends upon the facts and circumstances developed at the trial, and cannot be determined by the court but must be submitted to the jury.

Argued October 14, 1896. Appeal, No. 113, November T., 1896, by defendant, from judgment of C. P. No. 4, Phila. Co., Dec. T., 1894, No. 275, on verdict for plaintiff. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Affirmed.

Assumpsit to recover the amount of two checks alleged to have been forged.

The checks were signed by means of a rubber stamp made as a facsimile of a depositor's bank signature, which had been feloniously extracted from plaintiff's safe. The court below left the question of plaintiff's negligence in the custody of the stamp to the jury, who found in favor of the plaintiff for $666. Defendant appealed.

Other essential facts are sufficiently indicated by the assignments of error and by the opinion of the Superior Court.

*Errors assigned* were (1) in refusing to charge as requested in the first point submitted on behalf of the defendant, as follows :

"If the plaintiff had a rubber stamp made which was substantially a facsimile of his bank signature, and did not inform the defendant of it, he cannot hold the defendant liable for loss in consequence of the use of that stamp."

(2) In qualifying and answering the second point submitted on the part of the defendant, as follows :

"If the plaintiff had a rubber stamp made which was substantially a facsimile of his bank signature, and left the stamp

where others could have access to it, and did not inform the defendant of it, he cannot hold the defendant liable for loss in consequence of that stamp. *Answer:* I have already stated to you what is substantially the same as that contained in this point; that if he had such a stamp made, and left it where people could have access to it easily in the way I have described—if it was lying around where people could probably stumble on it, or in the ordinary course of their relation to the business would find it at hand, then the defendant would not be liable for this loss. The question is whether that was the way in which it was left, or whether it was put away in such a manner as you would say was, in view of all the probabilities of the case, sufficient to protect the stamp from being improperly used."

(3) In refusing to charge as requested in the defendant's third point, which was as follows:

"Under all the evidence in this case, your verdict must be for the defendant."

(4) In charging the jury as follows:

"It is true, undoubtedly, that a man who occupies the relation of depositor to a bank may be so careless in regard to putting in the hands of bad people the means of deceiving the bank, that when the bank is deceived by the misconduct, the fraud, the crime of such people, he cannot say that he should not be charged with the consequences. For instance, supposing a man leaves bank checks lying around his office signed, lying loose in his office, everything else filled up excepting the name; that he leaves them there for days and weeks; that somebody in his office gets hold of one of those checks, fills it up and presents it to bank; I should say in a case of that sort that you might very reasonably conclude that such a man was careless—so careless that he ought to be held responsible for the consequences, and that it would be grossly unjust and inequitable in such a case to charge the loss upon the bank, because he had put within the power of somebody, not only the means, but almost an invitation to do that which was wrong.

"So also I can conceive, in this particular case, using some of the facts of this case, that if the plaintiff had had a stamp made, which was practically a duplicate of his own signature—one which, when impressed upon paper, would produce a signature which to the paying teller of a banking institution would

seem to be his own signature—and left that lying around his office, where the office boy, or any clerk or bookkeeper could use it, and that could be shown to the satisfaction of a jury, that it would be quite natural for a jury to say, in that case, that the man's own carelessness had afforded an opportunity for imposition, and that he ought not to be permitted to recover where an innocent payment was made upon the faith that the signature was a genuine one. That perhaps, however, is a different case and an entirely different case from the present. Supposing you believe that this plaintiff, when he got this stamp back into his possession, if he did, put it in a safe inside of a small safe, which was inclosed in a larger one, locked the door to the small safe, put the key away in a drawer in that safe, and then took, as he says he thinks he did, the key to that drawer, and hid that somewhere else in the safe, then locked the safe, and put the key of the safe away in a box, which was on top of another one, and as he says, nobody in the office but himself or his son had access to either safe, would you or would you not say that a man doing those things, trying to protect himself so well as he did in such a case, was guilty of such carelessness as to involve himself, as matter of fairness, as between man and man, in responsibility for the conduct of somebody who surreptitiously found his way, notwithstanding all those guards, into the safe, and got hold of the means of perpetrating what you may call, and what has been called in this case, forgery? Now that is the question for you to settle; if you think that the plaintiff was careless in so doing, that he was negligent, that he was doing what he ought to have presumed would open the door to something like what was done in this case; if there was a fraud perpetrated in the manner described, then you ought to find against him upon that ground. But if, on the other hand, you think that his conduct was business like, that it was natural, that there was no such negligence in it, then you ought not to find against him upon that ground."

*Frank P. Prichard* and *John G. Johnson*, for appellant.— While it is true that this exact case has never been presented to the courts, it would seem to be equally true that it falls within general principles which are well established. The rule governing it was well stated by Judge KING in Bank of Ken-

tucky v. Schuylkill Bank, 1 Parsons' Equity Reports, 248, and repeated by Mr. Justice SHARSWOOD in Penna. R. R. Co.'s Appeal, 86 Pa. 80, as follows : The true doctrine on this subject is that where one of two innocent persons is to suffer from the tortious act of a third, he who gave the aggressor the means of doing the wrong must alone bear the consequences of the act: Grant on Law of Bankers, 17; Morse on Banks and Banking, 2d ed. 331; Van Schaack on Bank Checks, 119; Young v. Grote, 4 Bing. 253. This last case was followed by the Supreme Court of Pennsylvania in Garrard v. Haddan, 67 Pa. 82.

The same principle, although under different facts, was applied in the case of United States v. National Exchange Bank, 45 Fed. Rep. 163.

. And the same principle has been recently laid down in an elaborate opinion and under similar facts in the case of Burnett & Wood's Savings & Building Co. v. German Nat'l Bank, 3 Ohio N. P. Cases, 84. Even if the court did not err in leaving the question of negligence to the jury, the instructions given by the court were insufficient and erroneous, and laid down a wrong standard of negligence.

*Samuel Gustine Thompson,* for appellee.—As to the liability of the drawer or depositor for carelessness in keeping the check book, etc., cited Morse on Banking, 480; Belknap v. Bank, 100 Mass. 376; Leas v. Walls, 101 Pa. 64; Brown v. Read, 79 Pa. 372; Zimmerman v. Rote, 75 Pa. 191; McIntosh v. Bank, 123 Mass. 393.

OPINION BY RICE, P. J., January 18, 1897 :

This was an action to recover the amount of a bank deposit. The defense was that the money had been paid out on checks purporting to be drawn by the plaintiff. The jury have determined by their verdict that the signatures were forged, and no question is raised as to the correctness of this finding. But there was evidence that the signatures were made by a third person by the unauthorized and criminal use of a rubber stamp, which the plaintiff owned and kept in his safe. Upon this evidence a novel and interesting question is raised. The defendant's first proposition is, that if a depositor, without the knowledge

of his bank, has a rubber stamp made which is a substantial *facsimile* of his bank signature, he cannot hold the bank responsible for a loss which occurs by reason of the unauthorized signing by a third person of the depositor's signature to a check by means of this stamp. It will be observed that this proposition assumes that the depositor is responsible for the loss although there be no negligence on his part in the manner of keeping the stamp. If he keep it as securely as possible, if, for example, he should keep it securely locked in the best modern safe, to which no other person has access, and a burglar should break into the safe and use the stamp to affix the depositor's signature to a check, and the bank should honor the check, the loss would fall on the depositor. This is not an extreme statement of the defendant's position. But it is not unlawful for a man to have a rubber stamp by which a *facsimile* of his written signature may be affixed to papers. Nor is it so extraordinary a thing as to warrant a bank in presuming, without inquiry, that a depositor will not possess nor use such a stamp for any purpose. If the owner place it in the hands of a third person for the purpose of affixing his signature to certain papers, and he without authority, use it to forge the signature of the owner to checks, it might well be argued that the bank honoring the checks should not be responsible for the loss.

In such a case there might be propriety in applying the maxim that where one of two innocent persons must suffer, he should suffer who by his own acts occasioned the confidence and the loss. In the case supposed the loss would be traceable to the act of the owner of the stamp in the selection of the agent to use it. In the case in hand it was traceable, proximately, to the criminal act of a third person in the use of the stamp, and more remotely to his tortious, if not criminal, act in possessing himself of it against the will of the owner. In the former case there would be an element of negligence in the care of the stamp, while in the case in hand (looking at it from the present standpoint) there is none. These distinctions are, well illustrated in Penna. R. R. Co.'s Appeal, 86 Pa. 80, where it was held that if the owner of stock intrusts the certificates with blank powers of attorney to an agent for safe keeping, who fraudulently transfers them to a third party, who, in turn, without the knowledge of the fraud, has them transferred to

himself, the owner cannot recover from the corporation for the loss. This decision was put upon the ground that the owner had been negligent, and should not be permitted to shift from herself to the corporation the loss which resulted from the dishonesty of her own agent. Said SHARSWOOD, Justice : " Where one of two parties, who are equally innocent of actual fraud, must lose, it is the suggestion of common sense, as well as equity, that the one whose misplaced confidence in an agent or attorney has been the cause of the loss shall not throw it on to the other. As Judge KING has well expressed this principle in the Bank of Kentucky v. Schuylkill Bank, 1 Pars. Eq. Rep. 248 : ' The true doctrine on this subject is that, where one of two innocent persons is to suffer from the tortious act of a third, he who gave the aggressor the means of doing the wrong must alone bear the consequences of the act.' " Neither statement of this important principle sustains the defendant's proposition now under discussion; and in the case cited Judge SHARSWOOD conceded, that had the certificates of stock been lost or stolen from the possession of the owner the corporation would have been responsible for permitting the fraudulent transfer. See also Biddle v. Bayard, 13 Pa. 150.

We are referred to the decisions relative to the alteration of negotiable instruments by filling up blanks left by the maker. But in these cases there is an element of either negligence or of agency. It is a well settled principle in the law of negotiable securities, that, if the maker of a bill, note or check issue it in such a condition that it may be easily altered without detection, he is liable to a *bona fide* holder who takes it in the usual course of business before maturity. " The maker ought surely not to be discharged from his obligation by reason or on account of his own negligence in executing and issuing a note that invited tampering with: " Brown v. Reed, 79 Pa. 370, citing Phelan v. Moss, 67 Pa. 59 ; Garrard v. Haddan, 67 Pa. 82 ; Zimmerman v. Rote, 75 Pa. 188. According to these decisions the question is not, whether the maker so drew the paper as to make it possible to alter it without detection, but whether he used ordinary care and precaution. In Leas v. Walls, 101 Pa. 57, the instrument was a printed blank note with an open space for the insertion of the amount, the word " dollars " being printed at the end of the space. The successful alteration of

the amount from eight to eighty was made possible by the maker's omission to close up the space so that not even a single letter could be inserted. It was held, however, that the question whether the maker was negligent was clearly a question of fact for the jury. "In these circumstances to hold that the defendant was so palpably guilty of negligence, in not taking sufficient precautions against forgery, as that the jury could not be permitted to determine the question, and the court must determine it as a matter of law, would be equivalent to holding that the maker of a negotiable instrument must so execute it as to prevent the possibility of alteration in any event. Such a doctrine would be monstrous and contrary to every legal principle."

The rule, that where one of two innocent persons must suffer loss that party who did the act which was the occasion of the loss ought to bear it, is often misapplied to cases where the two persons are not equally without fault, but where one owes a duty to the other to do, or to refrain from doing, a particular thing, and has failed in the performance of that duty. But a man's responsibility, even for his negligence and that of his servants must end somewhere. As was truly remarked in Hoag v. Lake Shore, etc. R. R. Co., 85 Pa. 293, there is possibility of carrying an admittedly correct principle too far. It may be extended so as to reach the *reductio ad absurdum*, so far as it applies to the practical business of life. The doctrine as to remote and proximate cause as held in Pennsylvania has been thus stated in many cases : "In determining what is proximate cause the true rule is that the injury must be the natural and probable consequences of the negligence ; such a consequence, as under the surrounding circumstances of the case might and ought to have been foreseen by the wrong doer as likely to flow from his act." Hoag v. R. R. Co., supra; Pass. Ry. Co. v. Trich, 117 Pa. 390 ; Swanson v. Crandall, 2 Pa. Superior Ct. 85. The same rule, and for a stronger reason, applies when it is sought to hold one liable for the consequences of a lawful and non-negligent act. To apply the maxim invoked here, without regard to the question whether the act was the remote or proximate cause of the injury, would establish a degree of responsibility "quite beyond any legal limitations which have yet been declared." This would be a striking illustration of the danger of carrying an admittedly correct principle too far.

A bank is bound to know the signature of its depositors, and if it pay out the money on a forged check it cannot charge the depositor with the amount, but as against him must bear the loss. It may be conceded that the relation of the depositor to the bank implies a duty on his part to subject it to no extraordinary risks with regard to payment of his checks which he may avoid by the exercise of ordinary care and prudence. But we cannot assent to the proposition that it is negligence per se for him to have in his possession a harmless and useful thing; and one lawful for him to have, but which, in the hands of a thief breaking into his house or his safe, may be used to forge his signature. If he commit the use of it to an agent, selected by himself, or leave it in such a place as to invite the use of it for illegitimate purposes, there would be plausibility in the contention that he should be deemed to contemplate such use as one of the natural and probable consequences of his act. But, where he has used due care in securing it against unlawful use by others, it cannot be said that his mere possession of the thing was the proximate cause of the mispayment of the money to one who unlawfully possessed himself of it, and used it to commit a forgery.

The defendant's second proposition is, that, even if the court did not err in leaving the question of negligence to the jury, the instructions given by the court were insufficient and erroneous, and laid down a wrong standard of negligence. In order to discuss this proposition properly, it will be necessary to state some of the undisputed facts. In 1893 the plaintiff as president of a corporation had occasion to send out a large number of invitations to a banquet, and in order to save himself the labor of writing his name so often, had a rubber stamp made which would make a *facsimile* of his signature. For a time the stamp was kept in the company's office, but after he resigned the presidency it was sent to his private office which he rented from a gentleman who had the adjoining office. With this office he was entitled to the services of an office boy, of about sixteen years of age. For about nine months he employed this boy for errands and messages, including the sending of him to bank to draw money on checks. He never had occasion to doubt the boy's honesty. When the rubber stamp was returned to the plaintiff from the corporation office, he placed it in a compartment inside

of a fire proof safe.   He locked this compartment and put the key in a drawer in the safe, behind some papers, and covered it up.   He then locked the drawer and put the key in another unlocked drawer in the safe.   He then locked the safe and put the key in a little box, which he put in a wooden drawer or box, and this was kept on top of another safe.   The plaintiff's surmise was that the office boy had watched his moves, found where he kept the safe key, opened the safe and rummaged around until he found the stamp, and with it signed the two checks.   Assuming this theory to be correct, it turned out that, notwithstanding the plaintiff's precautions to guard the stamp, it was not kept where it would be absolutely inaccessible to others.   It follows that an unqualified affirmance of the defendant's second point would have been equivalent to binding instructions to find for the defendant.   But, for the reasons given in our discussion of the first proposition, the defendant was not entitled to such instructions.   The practical effect would be to hold the owner of a rubber stamp up to the same standard of responsibility as the owner of a vicious animal; in other words, to hold that he is bound to keep the stamp at all hazards where a trespasser or a thief cannot possibly get possession of it and use it.   This is not the standard of his responsibility to the bank in which he is a depositor or to the public.   He is not an insurer against its unlawful use, but it may be conceded that he is responsible for the consequences of his negligence in keeping it.   He is bound to exercise the care of an ordinarily prudent man.   To adopt the language of the learned trial judge; "was it put away in such a manner as was, in view of all the probabilities of the case, sufficient to protect the stamp from being improperly used?"   This was a question of fact for the jury, and was fairly submitted.   There are cases in which the court can determine that omissions constitute negligence, but they are exceptional—those in which the precise measure of duty is determinate, the same under all circumstances.   What constitutes negligence when the standard shifts, not according to any certain rule, depends upon the facts and circumstances developed at the trial, and cannot be determined by the court, but must be submitted to the jury: D., L. & W. R. R. Co. v. Jones, 128 Pa. 308, and cases there cited.

But complaint is made that the court set up an erroneous

standard of negligence. We do not think so. The illustration used by the learned judge in his answer to the second point was not intended as a standard to govern the jury. He evidently had in mind the rule that is laid down in the cases heretofore cited relating to the alteration of a negotiable instrument in which the maker has carelessly left blanks "so that it may be *easily* altered without detection." Following the rule laid down in those cases, he told the jury that under the facts of the supposed case the owner of the stamp would clearly be guilty of negligence and the bank would not be liable for the loss. But, recognizing the distinctions pointed out in Leas v. Walls, supra, he did not undertake to decide that under the actual facts of the case on trial, the plaintiff had or had not exercised the precaution of a prudent man in guarding the stamp against improper use.

The defendant has no just cause to complain of the submission, or of the manner of the submission, of that question to the jury.

Judgment affirmed.