## Jefferson County Bank v. Hansen Lumber Co.

(Decided Dec. 9, 1932.)

J. S. LUSCHER for appellant.
LAWRENCE S. GRAUMAN for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

This case comes before us upon a motion for an appeal by the Jefferson County Bank from a judgment recovered against it in the common pleas branch of the Jefferson circuit court, by the appellee Hansen Lumber Company, for the sum of $448.55, for which it sued upon assumpsit to recover as for money paid it by mistake.

Upon the trial, the facts appeared to be as follows: The plaintiff (appellee), the Hansen Lumber Company, is an Iowa corporation, engaged in the lumber business at Davenport, Iowa. The Continental Lumber and Manufacturing Company is a Kentucky corporation, engaged as wholesalers in the manufacture and sale of lumber and having its main office in Jefferson County Ky., and which will hereinafter, for convenience, be referred to as the selling company. The Jefferson County Bank, defendant below (appellant here), is also a Kentucky corporation, engaged in the banking business at Jeffersontown, Jefferson county, Ky.

On July 15, 1929, the Hansen Lumber Company sent its order to the Continental Lumber & Manufacturing Company, or selling company, at Louisville, Ky. for a certain amount of lumber, of the wholesale value of $632.70, payable on usual wholesale terms, the freight to be deducted from invoice.

On July 17, 1929, the selling company acknowledged its receipt and acceptance of said order. Later thereafter, on September 7, 1929, it advised the plaintiff that said lumber was being shipped it in certain initialed car No. 57819, over the Louisville & Nashville and Chicago, Burlington & Quincy Railroads, and that through its president it had transferred and assigned its invoice and delivered bill of lading for this purchased lumber to the Jefferson County Bank of Jeffersontown, Ky., and that it was drawing sight draft on it, payable to the order of said bank, for $408.31, and that bill of lading for said car No. 57819 would be attached to said draft and delivered to purchaser upon its payment.

On September 10, selling company drew draft on the Hansen Lumber Company for $408.31, as per terms of prior invoice, payable to the order of the Jefferson County Bank, said draft being in its form as follows:

"$408.31          Louisville, Ky., Sep. 10, 1929

"At Sight after receipt of B/L Invoice Pay to the order of Jefferson County Bank, Jeffersontown, Ky. Four Hundred and Eight and 31/100 Dollars—8% on C. of Ga. Car No. 57819.

"Hold Draft for arrival of B/L & Invoice

"Value received and charge same to account of

"To Hansen Lumber Co.

"No. A3 Davenport, Iowa
"Continental Lumber & Mfg. Co.
"By M. B. Patten,
"Pres. & Gen. Mgr."

This draft was returned unpaid by direction of the drawee, upon the grounds that it did not conform with the terms of contract.

H o w e v e r, a few days after, notwithstanding its return of draft, the plaintiff Hansen Lumber Company sent its check in the sum of $410, payable to the Jefferson County Bank, as an advance on said lumber, and on October 29 sent its further check to the Jeffer-County Bank for $38.55, as an additional advance payment thereon, making a total of $448.55 paid the appellant bank therefor.

These, its checks, received by the bank were at once credited upon the account of the selling company then carried with it.

It further appears that the selling company, when making its draft upon the purchaser for $408.31 for the lumber sold it, arranged with the appellant bank to advance it some $150 upon the security of the draft, which it assigned the bank, making it payable to its order and which, when collected, was then by it credited upon the selling company's account.

It is further admitted that this car of lumber was never shipped to nor received by the Hansen Lumber Company, nor was any bill of lading ever sent it therefor by the seller, as represented by its invoice of sale sent it, nor was any bill of lading by it ever delivered to the appellant bank to forward with draft made on the purchaser, Hansen Lumber Company, nor, in fact, was any bill of lading ever received by purchaser from anyone.

On the other hand, the evidence, without conflict, is that the appellee made payments upon this lumber upon its assumption, based on the representations of selling company's invoice sent it, that the lumber had been shipped it, even though purchaser had been expressly instructed, both by the invoice and by the terms of the draft alike, that the bill of lading and invoice would each be attached to the draft when presented for payment to it, and that drawee should pay the amount of the draft "after its receipt of bill of lading and in-

voice'' and to ''hold draft for arrival of bill of lading and invoice,'' and further, as stated in the invoice, that the appellant bank was to make collection of this draft ''after Hansen Lumber Co. has received bill of lading and invoice.'' which it advised was that day mailed to it.

Nothwithstanding these precautionary directions given the purchasing company, admonishing it against the payment of the draft until bill of lading and invoice had been received by it, it none the less paid this $448.55 upon this car of lumber which it assumed had been shipped it, in violation of its instructions that the draft forwarded by appellant company was not to be paid before bill of lading for the lumber was received.

Some nine months after the purchasing company had thus made these payments to the bank, during which time it had never received the lumber nor bill of lading therefor, it wrote the appellant bank on June 3, 1930, inquiring of it as to the miscarriage of its lumber purchase made the prior July from the Continental Lumber & Manufacturing Company and demanding that it send them the delayed bill of lading therefor, or, failing in this that it refund purchaser this $448.55 paid it by mistake and without consideration therefor.

Appellant refused to make refund of the money paid it, upon the grounds that when this money was received by it from the purchasing company it had been at once entered and credited by it upon the selling company's bank account carried with it, and that it had been entirely used by selling company, and, even further, that the said Continental Lumber & Manufacturing Company had, during this nine-month period, become and was then bankrupt, and that the appellant bank had also become insolvent and was then in charge of the state banking commissioner.

Suit was thereupon filed in the Jefferson circuit court by the Hansen Lumber Company against the Jefferson County Bank, wherein the facts as above detailed were in substance alleged and issues joined thereon by appropriate pleadings.

On trial of the case, at the conclusion of all the evidence, the court, upon plaintiff's motion, peremptorily instructed the jury to find for plaintiff, the Hansen

Lumber Company, and upon its verdict returned, judgment was entered.

Appellant's motion for a new trial being overruled, it has filed the record of these proceedings in this court and moves for an appeal, seeking a reversal of the judgment, assigning several grounds of alleged error therefor. We will here consider, however, only those which are in its brief insisted upon, which are as follows: (1) That the court erred in overruling defendant's exceptions filed to plaintiff's depositions taken upon interrogatories at the home office of the company in Davenport, Iowa, without notice of their having been given appellant; (2) that the court erred in not awarding the defendant a peremptory instruction to find for it and in having awarded a peremptory instruction to find in favor of plaintiff; and (3) that the court decided the case on its own motion, when it should have been submitted to the jury.

We do not consider it as here needful or requisite to discuss or pass upon appellant's first contention, insisting that its exceptions, filed to appellee's depositions, should have been sustained, for the reason that they could not be taken on interrogatories without notice being given appellant that they were to be filed. We pass without discussion or decision of this contention urged by appellant, inasmuch as our conclusion herein reached, decisive of other questions and grounds of objection, argued and strongly urged upon us for reversal of the judgment, we deem is such as to be conclusive of this appeal and that no decision of this procedural question of practice is here called for.

However, a more serious question is presented for our review upon the objection it urges, that the court erred in deciding the case on its own motion or in giving the jury a peremptory instruction to find a verdict in favor of plaintiff (appellee here) upon the evidence heard by it.

This evidence, detailed by us supra and which in all its material aspects and facts is without substantial dispute or conflict, shows that the plaintiff below paid the draft made upon it, or, rather, it paid to the bank by its checks something more than its amount upon the purchase price of the lumber it had bought from the selling company, the money being paid under circumstances and conditions which made its action in so do-

ing one of culpable negligence, in that it acted directly in the face of its instructions given it both by selling company on its invoice and by the bank on its draft. Appellee was thus well informed that it should not make payment on the lumber purchased by it until *after* it had received bill of lading and invoice.

These warning instructions given appellee, had they been reasonably observed, would have prevented its rash payment of the money it now complains of having lost, and would have averted the resulting loss therefrom, which now must be borne either by the appellant bank or the defrauded purchaser.

It is to be regretted that this mistaken payment of $448.55 made by appellee upon its lumber purchase, which it erroneously believed it would later receive, now represents a loss which, though induced by the seller's fraud, must now be borne either by the appellant bank or the purchasing lumber company. However, as between these two, we conceive the loss should fall upon the one of them to whose fault or negligence this loss is most fairly attributal. Equity will not postpone the interest of one who has omitted no duty devolving upon him, to the interests of another, whose negligence made it possible for the loss to occur. Johnson v. Geo. C. Bagley E. Co., 36 S. D. 531, 156 N. W. 76; Pennsylvania R. Co.'s Appeal, 86 Pa. 80; 21 C. J. sec. 176, p. 1160; 10 R. C. L. sec. 25, p. 698.

For answer to this inquiry, the evidence in the instant case is that the appellee not only improvidently and rashly and with gross negligence made the payment upon the mistaken assumption that this lumber had been shipped it by selling company and was then in transit to it, but, further, even after it had discovered its error of payment and its mistake in such assumption, it yet allowed some nine months to pass without advising or informing the appellant bank, to whom it had made payment of this $448.55, that it had never received either the bill of lading or the lumber. Thus it suffered appellant, through this extended period of its silence, following its act of negligent payment, to both receive and pay out this amount paid it, by crediting the collection made from appellee upon this fraudulent selling company's bank account carried with it, which it used and disbursed, thereby precluding all chance of its later recoupment, upon seller's later insolvency. In thus negligently failing

to notify appellant of seller's fraud and its failure to receive the lumber paid for, it suffered this bank's position be changed to its prejudice towards its customer, the fraudulent seller.

Appellee's payment to appellant it now sues to recover has now long since been turned over and credited by this collecting bank to its drawer's account and the amount appropriated and used by it. The selling company is now bankrupt, which precludes the possibility of recoupment of this amount paid to the bank from the selling company and a restoration of the parties to their former positions in statu quo. The result is that if the appellant bank were now called upon to refund to appellee this amount that has passed through its hands in regular course of collection and payment over to fraudulent seller, the drawer of draft, it would be, through the imposition of such obligation upon it, called upon to pay back from its own or its depositors' funds the amount of this mistaken payment, which it does not now have, and be required to make restitution to appellee for a loss which its conduct did in no wise induce or cause.

Its position, therefore, in refusing to refund to appellee the money paid it but no longer held by it, is clearly not one of unjust enrichment at the expense of the appellee, but is rather one of where appellee is asking appellant to bear upon its own shoulders a loss which appellee's own culpable negligence has caused and which loss, if appellee is here allowed to recover, would be now visited upon the appellant.

Clearly the rule of equitable estoppel, invented and grafted upon the common law to prevent wrongs, not to prosecute them, must now serve to estop appellee from recovering, as restitution, this amount, even though it is asked as being a recovery of money mistakenly paid appellant by it, when to grant it would result in visiting upon appellant the penalty of appellee's own folly and gross negligence, attendant upon its making this rash payment.

Not to here apply the doctrine of an equitable estoppel to appellee's unjust claim would be to overlook the proper interpretation of its true character and just application. While it may be conceded that the general rule is that where money is paid under a mistake of fact, although there was negligence on the

part of the person making the payment, it may be recovered, for the reason that otherwise the person receiving the money would be enriched at the expense of the other (21 R. C. L., sec. 196, p. 167), yet there is an exception to said rule which is equally true and well established as the rule itself (also stated in the section of R. C. L. supra), and which is:

"Where the mistake is due to the willful or intentional neglect on the part of the person making the payment to investigate the facts, he should not be allowed to recover the money paid; under such circumstances he would be estopped to allege that he was without knowledge."

And a further exception, thereto, is declared in this same volume, sec. 201. p. 170, to be that:

"The rule that money paid under a mistake of fact may be recovered back does not apply where the payment has caused such a change in the position of the other party that it would be unjust to require him to refund."

An analogous question to the one of estoppel here presented was considered by the Supreme Court in the case of Bend v. Hoyt, 13 Pet. 263, 267, 10 L. Ed. 154. Here the original suit was an action of assumpsit to recover back from the defendant collector of the port of New York a sum of money paid as duties upon certain imported goods, upon the ground that they were not liable to duty. An entry was made by plaintiff as consignee of eight cases of cotton gloves, upon which duty was payable. One case, No. 43, was designated on the invoice to be examined and was passed as correct, whereupon duty was levied upon this consignment. It was later discovered by plaintiff that one case (No. 45) did not contain cotton gloves but silk hose, which were not subject to duty, and that the plaintiff had mistakenly paid a duty thereon in the sum of $127.92. The question thus presented upon the evidence was: Assuming that an excess of duties had been paid by mistake on the above mentioned package No. 45, was the plaintiff under said facts entitled to recover back such excess in an action against the collector? The court, in the course of its opinion delivered by Mr. Justice Story, said:

"The question then arises, whether this action is

maintainable, not under ordinary circumstances of innocent mistake, but under circumstances of culpable negligence on the part of the plaintiff, and when the government can no longer be replaced in the same situation in which it stood at the time of the original transaction. Upon the best consideration which we can give to the subject, we are of the opinion, that the action, under such circumstances, is not maintainable. * * * The consignee had his choice, at the time of the entry, either to rely on his invoice, or to have the contents of each package examined. He chose the former; and the latter is, on the part of the government no longer practicable—at least, not so far as to be satisfactory or certain in its results. The error, if any there has been, has arisen, as we have already stated, from his own culpable negligence. * * * Even courts of equity will not interefere to assist a party to obtain redress for an injury which he might by ordinary diligence have avoided; and, a fortiori, a court of law ought not, where the other party has, by the very acts or ommissions, lost his own proper rights or advantages.* * * Here, by the conduct, and solemn affirmations, under oath, of the plaintiff, the position of the United States has been etirely changed; the property has been delivered up from the custody of the government, without any search or examination, in the perfect confidence that all was right; and we think the plaintiff is now estopped from setting up his own culpable negligence, to excuse him from the payment of the duties, which, by his own entry and oath he admitted to be due, and thereby obtained a delivery of the goods."

And again, in 2. R. C. L. sec. 38, p. 785, is this same rule thus stated:

"There is authority that it is no defense to the action that the mistake arose through the plaintiff's negligence, which has caused no damage to the defendant; though wherever money has been paid by a mistake which arose from the fault or negligence of the party paying the money, and cannot be recovered without prejudice to the party who has received it, the action will not lie."

Citing Ellis v. Ohio Life Insurance & Trust Co., 4

Ohio St. 628, 64 Am. Dec. 610; Langevin v. St. Paul, 49 Minn. 189, 51 N. W. 817, 15 L. R. A. 766; Fraker v. Little, 24 Kan. 598, 36 Am. Rep. 262; Appleton Bank v. McGilvray, 4 Gray (Mass.) 518, 64 Am. Dec. 92.

Appellee, however, contends that the appellant bank is not in position to invoke for its protection the general rule that money paid under a mistake cannot be recovered back from one to whom paid, when acting only as a collecting agent and paid over by him to his principle; because, appellee insists in the instant case, the bank was not acting as such an agent as it had a personal interest in the money paid it, by reason of its advancement or credit given upon the draft to drawer, thus bringing it within the control of a claimed exception to the rule as announced in volume 48, Corpus Juris, sec. 327, p. 768, as follows:

"Where the agent is not a conduit solely, but takes a personal benefit from the payment, the rule does not apply."

A footnote, under this text, cited in its support the case of Alberta Pac. Grain Co. v. Dominion Bank (Alta) 66 Dom. L. R. 735, wherein "it was held that where the principal was indebted to agent, and the agent upon receiving the payment credited it to the principal's indebtedness, the agent was not a mere intermediary, inasmuch as he was to receive a benefit from the payment, and accordingly, by reason of the making of such credit, recovery could be had by payor who had acted under mistake of fact in making payment."

We do not conceive that the argument of appellee here made is meritorious in insisting that appellant bank became responsible, regardless of the conditions under which the mistaken payment was made it, for a refund to appellee of the money paid it by mistake merely upon the grounds that it had, when accepting the draft for collection, given the drawer a small advance credit thereon, and that the legal effect of such arrangement was to thereby give appellant an interest in the collection, resulting in changing its status, of being merely a conduit for its collection, into an agency with an interest, carrying a new liability, because of such acquired interest, to make restitution, whenever demanded, of the mistaken payment.

Even should we concede that the bank's status was

changed as contended, it would not follow that because of appellant's acquiring such an interest in the collection, such fact would itself be sufficient to absolve the appellee from the duty of exercising any caution or reasonable care in the payment of its money, upon a draft directing that its payment be deferred until bill of lading and invoice should be received, or that such alleged interest acquired in the draft should effect a waiver by appellant of its own negligence in making mistaken payment, even should it result in its hurt and injury through later change of position.

Here, whether the appellant bank should be considered as having or not having, through its advance upon the draft made seller, acquired an interest in its collection, the appellee, it must be conceded under the admitted facts, is clearly shown to have acted with gross negligence in its making of its mistaken payment of this debt, made under circumstances wherein it was directly and knowingly violating all instructions and precautions given it against such payment. Such conduct, we are of the opinion, should precdude its recovery of the money paid to appellant, as to which its position has now changed to its prejudice and which it no longer has, nor ever had or controlled for other purpose than to apply and credit it upon the selling lumber company's account, whether in so doing it acted ''only as an intermediary or agency conduit of the collection,'' when made for the drawer of draft or not.

We think the applicable rule, here controlling appellee's situation, is stated in 10 R. C. L. sec. 24, p. 696, as follows:

''To have the benefit of an estoppel a per son must show good faith and diligence to learn the truth. The doctrine of equitable estoppel is essentially one of 'good conscience.' Where, therefore, one with convenient opportunity to ascertain the real facts by the exercise of reasonable diligence neglects to do so, he will not be permitted to defeat another's just rights by urging an equitable estoppel based upon his having acted to his advantage in reliance upon that other's innocently mistaken representation regarding those facts, where such representation was not made for the purpose of inducing him so to act.''

In the instant case, the position of appellant is

even stronger than that suggested in the text, for here the appellant bank, though forwarding seller's draft to appellee for payment, made no misrepresentations, innocent or otherwise, whereby the appellee was influenced and induced to pay the draft when presented it, but, on the contrary, it was expressly told and admonished by the instruction given it therein to pay the draft only when and after it had received the bill of lading and invoice of the lumber shipment. Any reasonable exercise of care by appellant in observing the draft's express admonition as to its payment would have prevented appellee's heedless payment of it and the resulting loss which it now seeks to impose upon appellant.

Further this court, upon its consideration of this question of estoppel as presented in the analogous case of First National Bank of Chattanooga v. Behan, etc., 91 Ky. page 560, 16 S. W. 368, 13 Ky. Law Rep. 148, said:

"It is well settled that money paid under a material mistake of fact may be recovered back although there was negligence on the part of the person making the payment. Mayer v. Mayer, etc. (of City of New York), 63 N. Y. 457. * * * The rule rests upon the principle that one person shall not be enriched by another's payment to him of money under a mistake as to his legal or moral obligation to pay it. But this rule is subject to the qualification that the payment cannot be recalled, when the position of the person to whom the payment has been made has been changed to his prejudice towards his debtor, in consequence of the payment. In that case the person making the payment must bear the loss."

See further, in an accord with this decision, the case of German Security Bank v. Columbia Finance & Trust Co., 85 S. W. 761, 27 Ky. Law Rep. 581.

We therefore conclude, after a careful review of the whole record, that the lower court erred for the reasons above indicated in granting appellee a peremptory instruction, and that it further erred in refusing to give such like instruction to appellant, as was also requested by it, and that, because of such errors, the judgment should be reversed.

Therefore, it follows that appellant's motion for an appeal should be and is sustained, the appeal granted, and the judgment reversed.