# Brown *versus* Reed.

1. If the maker of a bill, note or check issue it in such condition that it may easily be altered without detection, he is liable to a bonâ fide holder who takes it in the usual course of business before maturing.

2. The maker who executes and issues a note which by his own negligence invites tampering with, is not discharged from liability to an innocent holder.

3. A maker is not bound to the bonâ fide holder on a note, fraudulently altered, if he had used ordinary care and precaution.

4. If there be no negligence in the maker, the good faith and absence of negligence in the holder cannot avail him.

5. The paper in this case was part of a contract, so skilfully arranged that if a portion on the right end were cut off there would be left a negotiable note. *Held*, that whether there was negligence in the maker in executing such paper was for the jury.

6. Garrard *v.* Haddan, 17 P. F. Smith 82; Phelan *v.* Moss, Ibid. 59; Zimmerman *v.* Rote, 25 Id. 188, adhered to.

October 19th 1875. Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR, GORDON, PAXSON, and WOODWARD, JJ.

Error to the Court of Common Pleas of *Erie county:* Of October and November Term 1874, No. 135.

This was an action of assumpsit brought January 31st 1873, by W. W. Reed against T. H. Brown, upon the following note :—

" North East, April 3d 1872.

" Six months after date I promise to pay to J. B. Smith or order TWO HUNDRED AND FIFTY DOLLARS for value received, with legal interest, without defalcation or stay of execution.          T. H. BROWN."

Endorsed " J. B. SMITH, without recourse."

The case was tried April 24th 1874, before Vincent, P. J.

The plaintiff gave the note in evidence, and testified that he had bought it from the payee for $220, which he paid in cash. He testified further that he had received the note bonâ fide, and rested.

The defendant then offered to prove:—

" That the paper he signed has been altered since so signed, without his knowledge or consent, and that it was obtained from him

[Brown *v.* Reed.]

by fraud of the payee; also, to show what took place between Smith, the payee, and himself at the time the note was made; also, to show that the paper in suit is but the part of an .agreement entered into between himself and one J. B. Smith, purporting to constitute the defendant an agent to, sell 'Hay and Harvest Grinders' in North East and Harbor Creek townships, in the county of Erie, and that the paper making him such agent, has since it was signed by him, been cut in two without his knowledge or consent, so as to make the part in evidence read as a promissory note for $250, and that a large part of the original instrument was cut off, and that the paper in suit is not the whole of the paper signed by defendant, nor in the shape in which he signed it, but when signed by him was as as follows, to wit :—

*North East, April 3d* 1872. ⁂

"*Six months* after date *I* promise to pay J. B. Smith or bearer *fifty dollars* when I sell by order TWO HUNDRED AND FIFTY DOLLARS worth of Hay and Harvest Grinders, for value received, with legal interest, without appeal, and also without defalcation or stay of execution.

T. H. BROWN, Agent for Hay & Harvest Grinders."
⁂

The plaintiff objected to the offer, because, admitting it all to be true, it did not constitute a defence to the note in hands of an innocent purchaser for value, before maturity, and it was not alleged that the plaintiff is not such a purchaser; nor that there was any guilty knowledge on part of the plaintiff in this case before purchase of the paper.

[The paper was divided by cutting through between where the asterisks are placed.]

The offer was rejected and a bill of exceptions sealed for the defendant.

The court charged:—

" There is no evidence impeaching this paper as a note in the hands of the plaintiff and your verdict therefore must be for the plaintiff for the amount of note and interest."

The verdict was for the plaintiff for $280.54.

The defendant took a writ of error, and assigned the rejection of his offer of evidence and the charge of the court, for error.

*W. Benson,* for plaintiff in error.—A note once issued and then altered is void altogether : Masters *v.* Miller, 4 Term Rep. 320, 346 ; Fay *v.* Smith, 1 Allen 477 ; Wade *v.* Wittington, Id. 561 ; Coch *v.* Coxwell, 2 C., M. & R. 291 ; Smith's Lead. Cas. 934. Cutting the contract into two pieces rendered the whole contract, and hence the part held by the plaintiff, absolutely void as against the maker : 2 Parsons Notes and Bills 580-2 ; Chitty on Bills 182 ; Wheelock *v.* Freeman, 13 Pick. 165 ; Wade *v.* Wittington, 1 Allen 561 ; Fay *v.* Smith, Id. 477 ; Bruce *v.* Barber, 3 Barb. 374 ; Deny *v.* Reed, 40. Id. 16 ; Nazro *v.* Fuller, 24 Wend. 37 ; Warring *v.* Early, 2 El. & B. 763 ; Stephens *v.* Graham, 7 S. & R. 505 ;

Jardine *v.* Payne, 1 B. & Ad. 671; Benedict *v.* Cowden, 49 N. Y. 396; Story on Notes, sect. 408; Byles on Bills, sects. 254, 256.

*F. F. Marshall*, for defendant in error, cited Phelan *v.* Moss, 17 P. F. Smith 59; Garrard *v.* Haddan, Id. 82.

Mr. Justice SHARSWOOD delivered the opinion of the court, November 4th 1875.

The learned counsel for the plaintiff in error has appealed to us to reconsider and overrule Phelan *v.* Moss, 17 P. F. Smith 59; and Garrard *v.* Haddan, Id. 82; since followed in Zimmerman *v.* Rote, 25 P. F. Smith 188. We mean, however, to adhere to those cases, as founded both on reason and authority, and as settling a principle of the utmost importance in the law of negotiable securities. That principle is that, if the maker of a bill, note or check issues it in such a condition that it may easily be altered without detection, he is liable to a bonâ fide holder who takes it in the usual course of business, before maturity. The maker ought surely not to be discharged from his obligation by reason or on account of his own negligence in executing and issuing a note that invited tampering with. These cases did not decide that the maker would be bound to a bonâ fide holder on a note fraudulently altered, however skilful that alteration might be, provided that he had himself used ordinary care and precaution. He would no more be responsible upon such an altered instrument than he would upon a skilful forgery of his handwriting. The principle to which I have adverted is well expressed in the opinion of the court in Zimmerman *v.* Rote, 25 P. F. Smith, 191 : "It is the duty of the maker of the note to guard not only himself but the public against frauds and alterations by refusing to sign negotiable paper made in such a form as to admit of fraudulent practices upon them, with ease and without ready detection."

But would the facts offered to be given in evidence and rejected by the court below, have brought this case within the line of their decisions ? We think not. In Phelan *v.* Moss and in Zimmerman *v.* Rote, the party signed a perfect promissory note, on the margin or underneath which was written a condition which as between the parties was a part of the contract and destroyed its negotiability. But it could easily be separated, leaving the note perfect, and no one would have any reason to suspect that it had ever existed. In Garrard *v.* Haddan the note was executed with a blank, by which the amount might be increased, without any score to guard against such an alteration. In all these cases the defendants put their names to what were on their face promissory negotiable notes. In the case before us on the defendant's offer, he did not sign a promissory note, but a contract by which he was to become an agent for the sale of a washing machine. It was indeed so cunningly framed

[Brown *v.* Reed.]

that it might be cut in two parts, one of which with the maker's name would then be a perfect negotiable note. Whether there was negligence in the maker was clearly a question of fact for the jury. The line of demarcation between the two parts might have been so clear and distinct and given the instrument so unusual an appearance as ought to have arrested the attention of any prudent man. But it may have been otherwise. If there was no negligence in the maker, the good faith and absence of negligence on the part of the holder cannot avail him. The alteration was a forgery, and there was nothing to estop the maker from alleging and proving it. The ink of a writing may be extracted by a chemical process, so that it is impossible for any but an expert to detect it, but surely in such a case it cannot be pretended that the holder can rely upon his good faith and diligence. We think then that the evidence offered by the defendant below should have been received.

Judgment reversed and *venire facias de novo* awarded.