# Alexander *v.* Buckwalter.

*Promissory notes—Alteration—Bearer.*

In an action on a promissory note by a bona fide holder for value against the maker, where the note showed on its face that the printed words " order of " before the written name of the payee were stricken off and the words " or bearer " were written after the name in the same line in a blank space left large enough for that purpose without crowding, the court commits no error in charging that the plaintiff cannot recover if the jury find that the alterations were made after the note passed out of the hands of the defendant.

Where the defense to a suit on a negotiable promissory note is that it was altered in a material part after it was signed and delivered by the maker, and the alteration is not so far apparent on an inspection of the paper as to raise a suspicion of its purity, the burden of proof rests on the defendant. If, however, there is an apparent alteration, the burden of proving that it was lawfully made or that the paper is in the same condition as when it was issued, rests on the party offering it; and the court will refuse to receive it in evidence until some explanation of the apparent alteration has been made. The quantity of proof required to carry the question to the jury must depend upon the circumstances of each particular case.

In an action on a promissory note where the defendant, the maker, avers that the signature to the note was forged, it is proper for the court to call the jury's attention to the personal interest of the defendant and the argumentative character of his testimony, but an omission to do so is not ground for reversal.

In an action on a promissory note by a holder for value against the maker, where the latter avers certain material alterations of the note after execution, and the plaintiff produces the payee as a witness to what was said at the time of the making of the note, the defendant may be permitted to testify as to what occurred at the time of the execution of the note. Such testimony is not admitted for the purpose of proving a parol agreement between the maker and payee.

Though the presumption that a witness has testified to the truth may be removed by proof that he has testified differently upon a former trial of the same case, still it belongs to the jury to weigh such evidence and to determine the credibility of the witness.

Argued Dec. 13, 1900. Appeal, No. 219, Oct. T., 1900, by plaintiff, from judgment of C. P. Lancaster Co., Aug. T., 1897, No. 95, on verdict for defendant in case of George F. Alexander v. H. L. Buckwalter. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Assumpsit by holder against maker on a promissory note. Before LANDIS, J.

At the trial defendant alleged that the note had been materially altered, and that it was not the same note as the one which he had signed.

Defendant offered to prove by Amos K. Barr that he was present in the room at H. L. Buckwalter's, defendant's house, when defendant and P. O'Brien were executing the note given by H. L. Buckwalter for $125 for goods sold, and he heard and saw the said parties at and during the time said note was being executed, and that the conversation was that the words " or order " were to be stricken out of said note, that " Farmers' National Bank " was stricken out, and " without defalcation for value received " was to be stricken out, and the note was not to be negotiable or payable "to order," " or bearer."

Objected to by plaintiff.

&ast;        &ast;        &ast;        &ast;        &ast;        &ast;        &ast;        &ast;

Mr. Davis: " Q. Was George F. Alexander, the plaintiff in this suit, there?  A. No, sir."

The Court: I don't think that would make any difference. I think we will let him answer this.

Offer admitted and plaintiff excepts.  Bill of exceptions signed and sealed. [11]

Mr. Weaver: " Q. Were you present then in the room when Buckwalter and P. O'Brien were there?  A. Yes, sir. Q. Where were they?  A. In the kitchen.  Q. At a table? A. Yes, sir.  Q. In writing this note what did Buckwalter say and what did O'Brien; what did they agree to about the note?"

Objected to by plaintiff.

" Q. What was said?"

Objected to by plaintiff.  Admitted.  Plaintiff excepts. Bill of exceptions signed and sealed. [12]

" A. Mr. O'Brien filled out a note.  Mr. Buckwalter said, 'I would not sign that.'  So he made an alteration."

Objected to by plaintiff.

The Court: You did not see that?

" A. Just by conversation."

The Court: Just state exactly the conversation and nothing else.

" A. That is all I mean to do."

The Court: Nothing except the exact conversation between these two men.

" A. Well Mr. O'Brien asked him—"

The Court: And give their words as near as you can.

" A. It is a long time ago, I cannot just remember everything, but as near as I can tell he wrote a note. The conversation he had. Buckwalter says, ' I won't sign that.' ' Well,' he says, ' what will you sign ? ' Mr. Buckwalter says to him, ' If you will write a note payable at my house, at home, I will sign it, otherwise I would not sign no paper.' He says, ' That is all right; payable at your house I will make it, payable right at your house,' he says."

Objected to by plaintiff.

" A. That is about what was said. Q. What was said, if anything, in regard to the words ' or order? '

Objected to as leading.

" A. He said that he would strike that out, he would not sign that. Q. What did he say in regard to the Farmers' National Bank? A. Well he would not sign a note of that. Q. What did he say about defalcation for value received? A. He did not want that on either. Q. That is, Mr. Buckwalter in O'Brien's presence? A. Yes, sir."

Mrs. Anna Wenger, a witness called by the defendant, was asked this question: " Q. Did I understand you to say that you heard a certain conversation and then saw them write? A. Yes, sir. Q. Is that what you meant. A. Yes, sir."

The Court: We will let her state just the conversation and nothing else in regard to the note. [13]

Objected to by plaintiff. Admitted. Plaintiff excepts. Bill of exceptions signed and sealed.

The witness: " Well, they had a note, and Mr. Buckwalter said he would not sign a note until ' or order ' was crossed out, and ' The Farmers' National Bank ' and 'defalcation for value received.' Q. Those had to be crossed out? A. Yes, sir; had to be crossed out, and Mr. O'Brien would come himself to the house for the—"

Objected to by plaintiff.

Mr. Weaver: " Q. You heard that? A. Yes, sir. Q. You heard Mr. O'Brien and Mr. Buckwalter talking about that? A. Yes, sir."

The court charged as follows:

Gentlemen of the jury: The plaintiff in this case has brought suit against H. L. Buckwalter, the defendant, to recover the amount of a promissory note, with interest. That note, which he claims is due and owing to him, reads as follows: "$125. Lancaster, October 7th, 1895. Twelve months after date, I promise to pay to the order of ('order of' is stricken over with the pen) P. O'Brien, or bearer, at the Farmers' National Bank of Lancaster, ('Farmers' National Bank of Lancaster' is stricken over with the pen,) to be paid at H. L. Buckwalter's house (is inserted in the note,) one hundred and twenty-five dollars, without defalcation, for value received. (Signed) H. L. Buckwalter. Credit the drawer." On the back of the note appears: "Leopard Hotel, Lancaster, Pa., $5 paid on this note. P. O'Brien."

The plaintiff states, that on January 29, 1896, he became the owner of this note, for a valuable consideration, and that neither it, nor any portion thereof, has since been paid to him. He states to you that he obtained it from one Gallagher, who received it from other parties. The note was originally given to P. O'Brien, and bears upon its face certain erasures and alterations. Therefore, P. O'Brien testified in plaintiff's behalf that the note was received from H. L. Buckwalter on October 7, 1895, in the condition that it now is, and Mr. Alexander says that it is now in the same condition as it was when he purchased it.

The defendant, on his part, states that he did sign a note payable to P. O'Brien, on October 7, 1895, but that the note in suit is not the one he signed that day. He states that the note he signed read as follows: "Lancaster, Pa., Oct. 7, 1895. Twelve months after date, I promise to pay to the ('order of' stricken out) P. O'Brien, at the ('Farmers' National Bank of Lancaster,' also with a line through these words,) to be paid at H. L. Buckwalter's house (is inserted,) one hundred and twenty-five dollars, ('without defalcation, for value received,' these words also stricken over). Credit the drawer." And his name signed to it: "H. L. Buckwalter." He says he would not sign the note until these changes were made, and that the words "or bearer" did not appear in the note which he signed. [He states to you that this note was signed at his house, and

that there were present Amos K. Barr and his daughter, Mrs. Annie Wenger. Neither of these two last named parties saw the note, and all they can testify to, is a conversation between O'Brien and the defendant, at the time they were sitting at the table, as they and Buckwalter himself say preparing it. You will remember what that conversation was, and to what extent it differs from the note in suit, which you have had before you and examined for yourself.] [10] Buckwalter admits that he never heard of any other note except the one in suit, that is, that no other note was ever presented to him for payment.

[To contradict the defendant, the plaintiff called Alderman Halbach and Mr. J. D. Pyott. Mr. Halbach says that, at the hearing in this case, the defendant admitted that he signed the note, but he also states that there was some talk by Mr. Weaver at the time of the name being Mr. Buckwalter's, but that he did not sign it.] [3]

[In the first place, we say to you, that if he did not sign this note at all, then it would be a forgery, and he would not be liable to the plaintiff, even though the plaintiff was an innocent holder for value; for, if he did not sign the note, it was not his note, and he could not be held answerable for it. Therefore, it will be your duty to pass upon that question first. If you find that the note is a forgery, then you will render a verdict in favor of the defendant. If you find that it is his genuine signature, then there will be an additional question for you to pass upon, as to whether any material alterations have been made in the note since it passed out of the hands of the maker.] [1]

The maker of negotiable paper is always presumed to have issued it clear of all blemishes, erasures or obliterations, and, when any such appear on the face of a note, it is the duty of the holder to show that it was in that condition when issued. The policy of the law is against all tampering with written instruments, and especially commercial paper. He who takes a blemished bill or note, takes it with all its imperfections on its head. The very fact that he receives it, is presumptive evidence that it was unaltered at that time. Therefore, it being conceded in this case, that there are alterations on the face of this note—and an inspection of it shows manifest erasures and

interlineations—the duty, in the first place, became incumbent upon the plaintiff to show that he was a holder for the value of the said note—that is, that he had paid or given something valuable for it; and, in the second place, that these erasures and interlineations were made before the note passed from the hands of Mr. Buckwalter, its maker.   He has shown you that he was a bona fide holder, and that fact has not been contradicted by the defendant.   In support of the second proposition, he has offered P. O'Brien to show that the note is now in the same condition as it was when it was originally given by Buckwalter, and your inspection of it and the testimony of Mr. Pyott may also be taken into consideration upon this point. It is the law that the alteration of a promissory note in a material part, without the authority of the maker, will render it void as to the maker, even in the hands of an indorsee.   Where such a note has been tampered with and the alteration appears upon its face, the holder takes it with notice and is chargeable with all the consequences of such notice and cannot recover, unless the alteration is affirmatively shown by him to have been innocently made, without prejudice to the rights of the parties sought to be charged with liability, or to have been made with the concurrence of the maker.   [If, therefore, you believe that this note sued upon is not the note of Buckwalter, but is forged by some one, and that the note that he gave on October 7, 1895, is not this note, then your verdict must be for the defendant.]  [2]   If, on the other hand, you find that this note is the genuine note that he gave on October 7, 1895, and is in the same condition as it was at that time—that is, unaltered in any material part since that time—then your verdict must be for the plaintiff for the amount of the note, with interest; for it makes no difference whether Buckwalter received any value for the note or not, nor would it make any difference if he was, at that time, and before the signing of the note, tricked into signing it, without a knowledge that the words "or bearer" appeared in the note, nor would it make any difference where it was payable, because that is entirely immaterial to this case.   We cannot here enter into what was the original consideration for the note.   There is no testimony on that point before you, and you cannot consider that question at all.   The court has said, in the progress of the trial,

that that question does not enter into this case. In fact, it makes no difference if there was no consideration for the note, for the maker could have signed the note for the accommodation of O'Brien, and he would still be liable to any innocent holder for value, who afterwards became the owner of it.

[Secondly: If Buckwalter signed the note, and you find this to be the note that he signed, but you also find that, after it was signed and delivered, it was altered by inserting the words "or bearer" in the note, then we say to you, that that is such a material change in the note as would render it void as against Buckwalter, and your verdict, in such case, must be for the defendant.] [4] We do not think that any serious question can arise as to the words "without defalcation, for value received," because there is plainly no alteration to these words on the face of the note here presented, and, if the note is a forgery, we have told you there can be no recovery, and, if the note is a genuine note, it would seem, on the face of this note, that Buckwalter is mistaken in that these words were crossed over, for no indication of that kind appears upon the face of the note itself, nor do we think that those words, as we have said, are material to this issue, for they do not, in any way, affect the recovery upon the note.

The whole question turns upon the two points : Is this the note signed with the genuine signature of Buckwalter? Second, was the note altered after it passed out of Buckwalter's hands in a material part, to his prejudice? If either of these questions is answered in the affirmative, your verdict must be for the defendant. But, on the other hand, if you find, as I have before stated, that it is the genuine note of Buckwalter, unchanged from the time that he signed it until the present date, your verdict must be for the plaintiff.

The gentlemen have submitted certain points to us, which it is our duty to read and answer, and we will now proceed to do so. The plaintiff's points are:

1. If the jury believe the signature to be genuine of H. L. Buckwalter, the defendant, to the note in suit, then their verdict should be in favor of the plaintiff. *Answer :* We say, in answer to that, if the jury believe that the signature of H. L. Buckwalter is genuine, and also believe that there are no material alterations of the note as originally signed, then the ver-

dict should be in favor of the plaintiff. This would not be so if the note was materially altered. [5]

2. If the jury believe the defendant testified at the hearing, before Alderman Jacob Halbach, that it was his signature to the note in suit, he is discredited, and the verdict should be in favor of the plaintiff. *Answer:* We cannot affirm this point as stated, because it involves a disputed part of the testimony, which must be submitted to you to pass upon. [6]

3. If the note in suit is genuine, then, even if the words " or bearer " were added afterwards, it is not such an alteration as is apparent upon the face of the note, if such words " or bearer " were filled in the note before it passed into the hands of Alexander, the plaintiff. *Answer:* This point is refused. We have already stated to you the law raised by it in our general charge. [7]

The defendant's points were :

1. If the jury find that the signature to the note offered in evidence is not the signature of H. L. Buckwalter, the verdict must be for the defendant. *Answer:* That point is affirmed. We have already so stated to you. [8]

2. If the jury find that the words " or bearer " were inserted in the note in question by P. O'Brien, or any one else, after he received the same from H. L. Buckwalter, the defendant, and find the note signed by H. L. Buckwalter, it was such an alteration in the said note as would make it void in the hands of the present holder, the plaintiff, and the verdict must be for the defendant. *Answer:* We have already stated to you that this is the law, if the alteration was made without Buckwalter's consent. [9]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1–9) above instructions, quoting them. (10–13) Rulings on evidence, quoting the bill of exceptions.

*B. F. Davis*, for appellant.—This was not an interlineation. The words were written in the blank space after the name " P. O'Brien " and on the same line, with the same ink, not crowded, same handwriting, and as J. D. Pyott, an expert witness, says at the same angle and same time. O'Brien swore it was done at the time the defendant signed the note. The

alleged alteration impliedly admits the execution of the note, and the defendant under the policy of the law should not be permitted to impugn a note he put in circulation : John's Admr. v. Pardee, 109 Pa. 545.

Assuming there was an alteration, it was not apparent from an inspection of the note: Garrard v. Haddan, 67 Pa. 82; Worrall v. Gheen, 39 Pa. 388; Zimmerman v. Rote, 75 Pa. 188; Brown v. Reed, 79 Pa. 370 ; Phelan v. Moss, 67 Pa. 59; Williams v. Starr, 5 Wis. 534.

The leaving of a blank space to be filled was an authority to a bona fide holder to fill it: Atwood v. Griffin, 2 Carr. & Payne, 368; Cariss v. Tattersall, 2 Manning & Granger, 890.

The drawer of the note cannot impugn the paper he signed by his declarations: Wilt v. Snyder, 17 Pa. 77 ; Gest v. Espy, 2 Watts, 265; Parke v. Smith, 4 W. & S. 287 ; John's Admr. v. Pardee, 109 Pa. 545 ; Smith v. DeWruitz, Ryan & Moody, 212; Shaw v. Broomn, 4 Dowling & Ryland, 730 ; Barough v. White, 2 Carr. & Payne, 8.

*W. D. Weaver*, for appellee.—He who takes a blemished or altered note becomes sponsor for it, takes it with all its imperfections, and cannot recover against a maker unless he can show that such alterations were made with the concurrence and sanction of the maker: Simpson v. Stackhouse, 9 Pa. 186; Hill v. Cooley, 46 Pa. 259; Heffner v. Wenrich, 32 Pa. 423; Hartley & Co. v. Corboy, 150 Pa. 23; Gettysburg National Bank v. Chisolm, 169 Pa. 564; Citizens National Bank v. Williams, 174 Pa. 66; Weiser's Est., 5 York Leg. Rec. 5.

OPINION BY RICE, P. J.,   May 23, 1901 :

This was an action of assumpsit brought by a bona fide purchaser for value before maturity of a promissory note against the maker.   The note was drawn upon a printed blank, which, before being filled, was in this form:

---

LANCASTER, PA.,                    189 .

..... after date ........... promise to pay to the

order of ................................ at the

FARMERS NATIONAL BANK OF LANCASTER

.................................... Dollars,

without defalcation for value received.

Credit the Drawer   }

---

When the note came into the plaintiff's hands it read as follows:

---

$125.                    LANCASTER, PA., Oct. 7th, 1895.

Twelve months after date I promise to pay to the
~~order of~~ P. O'Brien or Bearer                    at the

~~FARMERS NATIONAL BANK OF LANCASTER~~

To be paid at H. L. Buckwalter's house
One Hundred and Twenty-Five                    Dollars
without defalcation for value received.
Credit the Drawer   )   H. L. Buckwalter.
Oct. 10, '96.        }

---

The defendant set up two defenses: first, that the signature
to the note is a forgery; second, that, if he executed the note,
it was altered after it left his hands, and without his authority,
by the insertion of the words, " or bearer." As to the second
defense the learned judge instructed the jury as follows: " Secondly, if Buckwalter signed a note, and you find this to be the

note that he signed, but you also find that, after it was signed and delivered, it was altered by inserting the words ' or bearer ' in the note, then we say to you that that is such a material change in the note as would render it void as against Buckwalter, and your verdict, in such case, must be for the defendant." Unquestionably the alteration above alluded to was a material one, and as there is no evidence that after the note was delivered to the payee the defendant authorized it to be made, no exception could be taken to the instructions, if the action had been brought by the payee.   Were they correct in an action by a bona fide holder for value?   Clearly not, if the facts warranted the application of the equitable principle that where one of two innocent persons must suffer loss by reason of the fraud or deceit of another, the loss should fall upon him by whose act or omission the wrongdoer has been enabled to commit the fraud. This principle has been successfully invoked by bona fide purchasers for value of commercial paper, alleged to have been altered after execution by the maker.   It was distinctly recognized and applied by this court in the recent case of Howie v. Lewis, 14 Pa. Superior Ct. 232, where a judgment note was given containing the clause " this note shall be subject to the same rules governing commercial paper as to equities."   A leading case is Garrard v. Haddan, 67 Pa. 82.   It appeared in that case that Garrard signed a printed note, in the blank of which was written " one hundred," leaving a space between that and " dollars " which was in print, and this, after delivery, was filled with " fifty " in the same hand and ink.   It was held that Garrard was liable for the full face of the note as altered to a bona fide holder for value.   Where a negotiable note on a printed blank was signed after there was written on the margin words to the effect that it was given for a patent and was not to be paid until a specified profit was made, and after delivery by the maker this marginal writing was cut off, and as thus mutilated the note came into the hands of a bona fide indorsee for value without notice, it was held in an action by him against the maker, that, as there was nothing on the face of the note to indicate that it was not in the same condition as when issued, the plaintiff was not affected by the alleged alteration of the paper: Zimmerman v. Rote, 75 Pa. 188.   The court said: " It is the duty of the maker of the note to guard not only himself but

the public against frauds and alterations, by refusing to sign negotiable paper made in such a form as to admit of fraudulent practices upon them, with ease and without ready detection." The paper sued upon in Brown v. Reed, 79 Pa. 370, was part of a contract so skilfully arranged that by cutting off a portion on the right end there was left a negotiable note. It was held, that whether there was negligence in the maker in executing such a paper was for the jury, but it was impliedly held that if they found from the evidence that the line of demarcation between the two parts was so clear and distinct and gave the instrument so unusual an appearance as ought to have arrested the attention of any prudent man, the maker would be liable to a bona fide holder who took it in the usual course of business before maturity.

In Leas v. Walls, 101 Pa. 57, the instrument was a printed blank note with an open space for the insertion of the amount, the word "dollars" being printed at the end of the space. The successful alteration of the amount from eight to eighty was made possible by the maker's omission to completely score out the blank. Whether or not he was negligent in not beginning the scroll so close to the word "eight" that not even a single letter could be inserted, was held to be a question for the jury. It is thus seen that the question is not, whether the maker so drew the paper as to make it possible to alter it without detection, but whether he failed to use ordinary care and precaution to protect not only himself but the public against a fraudulent alteration of the instrument. It is a question of negligence, to be determined by the court if the facts are not in dispute, and but one reasonable inference can be drawn from them, as in Garrard v. Haddan, or to be submitted to the jury with proper instructions, if there be doubt as to the facts or as to the inferences to be drawn from them, as in Brown v. Reed. The Pennsylvania cases upon the subject differ in that regard only. They all teach one principle, which has been declared to be, "that, if the maker of a bill, note or check issues it in such a condition that it may be easily altered without detection, he is liable to a bona fide holder who takes it in the usual course of business before maturity. The maker ought surely not to be discharged from his obligation by reason or on account of his own negligence in executing and issuing a note that invited

tampering with : " Mr. Justice SHARSWOOD in Brown v. Reed, supra. In considering the applicability of this principle to the case at bar, it is to be borne in mind, first, that the note was in precisely the same condition when it came into the plaintiff's hands as it was when it left the defendant's hands—assuming that this is the note he signed—with the single exception, alleged by the defendant, that the words " or bearer " had been inserted in the meantime ; also, that ample space was left for the insertion of these words, upon the same line and without crowding, after the name of the payee. As was said in Garrard v. Haddan, so it may be said of this note, there was no difference in the handwriting between the words added and those which preceded them, no difference in the ink, and no crowding of words, but it cannot be said in this case, as it could in that, that there was nothing to put a prudent man on inquiry or to raise a suspicion that all was not right. On the contrary a prudent man would have seen that if the blanks had been properly filled the note would have been payable to order, at a certain bank, whereas when it came to the plaintiff's hands it was a note payable to bearer at the house of the maker. As part of this alteration consisted of erasures and an interlineation, he had no right to assume, either as a matter of law, or as a matter of common prudence, that the note was in the same condition as to the terms of its negotiability as when it left the maker's hands. " Where the defense to a suit on a negotiable promissory note is that it was altered in a material part after it was signed and delivered by the maker, and the alteration is not so far apparent on an inspection of the paper as to raise a suspicion of its purity, the burden of proof rests on the defendant. If, however, there is an apparent alteration, the burden of proving that it was lawfully made or that the paper is in the same condition as when it was issued, rests on the party offering it ; and the court will refuse to receive it in evidence until some explanation of the apparent alteration has been made. The quantity and character of proof required to carry the question to the jury must depend upon the circumstances of each particular case : " Gettysburg Nat. Bank v. Gage, 4 Pa. Superior Ct. 505 ; Simpson v. Stackhouse, 9 Pa. 186 ; Hill v. Cooley, 46 Pa. 259 ; Hartley v. Corboy, 150 Pa. 23 ; Gettysburg Nat. Bank v. Chisolm, 169 Pa. 564 ; Citizens Nat. Bank

v. Williams, 174 Pa. 66. Presumably the plaintiff knew this rule of law, and in taking a paper, blemished as this was, without inquiry of the maker, he took the chances of being able to prove to the satisfaction of a jury that the alteration of the paper from a note payable to order, to a note payable to bearer, was lawfully made, or that as to its negotiability, it was in the same condition as when it was issued. If the defendant was negligent, so also was the plaintiff. To extend the rule under consideration, so as to protect one who was willing to take such chances, would be contrary to sound principle, and would be warranted by no authoritative precedent that has been called to our attention, or that we have been able to find. The fourth, fifth, seventh and ninth assignments of error are overruled.

The genuineness of the signature to the note was in issue. The plaintiff in his first and third points impliedly admitted this to be so, and invited the submission of the question to the jury. Under the defendant's testimony the court could not have done otherwise. The credibility of the defendant, and the effect of his testimony, if believed, were for the jury to determine. If they believed him, they were justified in finding that the signature was a forgery. We agree with the plaintiff's counsel that it would have been entirely proper for the court to call the jury's attention to the personal interest of the defendant and to the argumentative character of some portions of his testimony. But we cannot say that his omission to do so is ground for reversal. " That a judge does not make all the remarks of which the nature of the case may admit is not invariably ground for reversal. If such were the rule few judgments would be affirmed, for there are few cases in which something in addition, that might have been appropriately said, could not be suggested:" Wetherill v. Erwin, 12 Pa. Superior Ct. 259. The first, second and eighth assignments are overruled.

The testimony which is quoted in the eleventh, twelfth and thirteenth assignments was not admitted for the purpose of proving a parol agreement or condition between the maker and the payee, nor in his charge did the learned judge permit the jury to give it that effect. The defendant admitted that he signed a note, but contended that the words " order of " and " Farmers National Bank of Lancaster " were crossed off, and the words, " To be paid at H. L. Buckwalter's house " were

interlined at his request before the note was signed.   This was
in entire harmony with the testimony of O'Brien, the payee,
which was introduced by the plaintiff.   So far as the testimony
objected to related to these alterations, it certainly did not harm
but helped the plaintiff's case.   But the defendant went further,
and swore that in the note he signed, the words "without de-
falcation for value received" were also crossed off.   These two
witnesses, A. K. Barrand and Mrs. Wenger, testified that at
the very time that the note prepared by O'Brien was being
changed to conform to the defendant's wishes, he insisted
that this last mentioned change-should be made.   The testi-
mony was to some extent corroborative of the defendant's
allegation that the note produced on the trial was not the
note he signed, and being part of the res gestæ was admis-
sible.   Moreover, the plaintiff had introduced the testimony
of O'Brien, the payee, as to certain requests and suggestions
made by the defendant at the execution of the note with re-
gard to what should be left out and what should be put in
the same.   This furnishes an additional reason for permitting
the defendant to show all that was said at that time with re-
gard to the same matter.   The eleventh, twelfth and thirteenth
assignments are overruled.

Though the presumption that a witness has testified to the
truth may be removed by proof that he has testified differently
upon a former trial of the same case, still it belongs to the jury
to weigh such evidence and to determine the credibility of the
witness.   According to the better reasoning and the weight of
authority, the maxim "falsus in uno, falsus in omnibus," which
is supposed to apply here, is a rule of permission, and not a
mandatory one to be laid down by the court as binding the jury
without regard to the corroborating circumstances.   We think,
therefore, that the court committed no error in its answer to
the plaintiff's second point.   The sixth assignment is overruled.

In the portion of the charge which is the subject of the third
assignment of error, the court correctly stated the substance of
Alderman Halbach's testimony, and, whilst the learned judge
might well have omitted any reference to what the defendant's
counsel said at the hearing, it is to be observed that he did not
misstate what Alderman Halbach had testified to upon that sub-
ject.   Notwithstanding the very earnest and zealous argument

of the plaintiff's counsel in support of this assignment, we are of opinion that it cannot be sustained. It is therefore overruled.

None of the assignments of error being sustained, the judgment is affirmed.