## SAMUEL HILL *v.* ALEXANDER SCOTT.

1. It is not a valid objection to a book of original entries, that the entries are written in lead pencil.

2. Evidence of the amount of goods consumed by a defendant, during the time covered by charges in a book of original entries against him for goods of that kind, furnished to him by the plaintiff, which goods so furnished were the subject of action, was properly received.

ERROR to the Common Pleas of Washington.

*Oct.* 27. This was an action of *assumpsit* by Alexander Scott against Samuel Hill to recover $237.80, for coal delivered by him to the defendant.

The plaintiff introduced several witnesses as to the amount of coal delivered at his bank to Hill's wagons. He also put in his book of original entries, which, so far as it had been kept by himself, was admitted, and so far as it had been kept by another person, was rejected. The portion of it admitted was written with a pencil. The plaintiff also proved by the defendant's clerk, that a large amount of coal was got from Scott's bank for the defendant's glass works; and then, by persons employed in those works, he showed the amount of coal daily consumed in them, during the period covered by his claim. Exceptions were taken to the admission in evidence of the book, and of the testimony as to the daily consumption of coal in the defendant's works; and, the verdict having passed for the plaintiff, those matters of exception were assigned here for error.

*Alden*, for the plaintiff in error.

1. The admission of the party's book was an innovation, springing from the necessity of the case, and ought not to be extended beyond its old limits. An altered or erased book ought not to be admitted, if the alteration is material, 6 Wh. 146; nor should one in which, as here, from the nature of the entry *in pencil*, alterations may be made at pleasure.

2. It was shown that the coal used at the works was got from *other banks*, as well as from Scott's.

*Watson* and *Acheson*, contrà.

1. An endorsement in pencil is good. Where the law requires a contract to be in writing, it does not require it to be written in ink: 11 E. C. L. R. 214; S. P. 2 E. C. L. R. 385; 12 Johns. 106; 14 Ib. 491; Heart *v.* Hummel, 3 Barr, 414; Dialogue *v.*

Hooven, 7 Barr, 327. The usual mode of keeping books cannot be declared bad by a Court: Kaughby v. Brewer, 16 S. & R. 133.

2. This evidence was merely corroborative.

The opinion of this Court was delivered by

COULTER, J.—The first error assigned is that the Court admitted as evidence the plaintiff's book of original entries, although part of it was written with a pencil. The plaintiff below was a vendor of coal, at his coal bank, and the book was the original entries of the coal sold and delivered. There was a variety of other testimony corroborative of the book. It was contended by the counsel for the plaintiff in error, that books of original entries, sustained by the supplementary oath of the plaintiff, are a dangerous kind of evidence, and ought not to be extended, and that a book of original entries, kept partly in pencil mark, never had been admitted, as to the entries made by the pencil mark. But it was truly replied by the counsel for defendant in error, that all kinds of testimony are environed with danger. Records and specialties are forged, and witnesses are at times guilty of perjury; but it follows not that such kind of testimony ought to be excluded. Book evidence is subject to these safeguards and tests: first, the inspection of the Court, who, if it appears to be erased or altered, will not let it go to the jury unless these alterations and erasures are explained; and second, to the inspection and scrutiny of the jury; and this process of examination would be as likely to detect fraud in pencil entries, as where they were made with ink. The law must accommodate itself to the business habits and convenience and customs of the country. Originally, when shop books were admitted in evidence, the entries were made in black ink. But now it is customary to use a kind of blue. I have seen books and articles of agreement written in such pale and watery ink, that it was very hard to decipher them. In the country, people often make their own ink, and make it badly, the characters written by which are not so legible as those made by pencil. At a coal mine an inkholder is not always at hand, nor at a lime kiln, or marble quarry, and many other places. We are constrained by the force of authority to say that the book was admissible, and we perceive nothing in the convenience of the country or the integrity of evidence which fairly oppose it.

In Gray v. Physick, 11 Eng. Com. Law Reports, 214, Abbott, C. J., says, that, when the law requires a contract to be in writing, there is no authority for saying that the writing must be with ink;

and Bayley, J., observes that a writing in pencil is a writing within the meaning of that term at common law, and that it is a writing within the custom of merchants.    A memorandum of an agreement made with a lead pencil, by a broker employed to purchase goods, was held a sufficient entry within the statute of frauds: 12 John. 106; S. P. 14 Id. 491.    In Jeoffry v. Walton, 2 Eng. Com. Law Reports, 385, a memorandum of an agreement made with a pencil was received as evidence, and Lord Eldon refers to it as the written agreement.    These authorities abundantly prove that a writing in pencil is equivalent and tantamount to a writing in ink.    And if good evidence as to contracts, it is good in books, which are nothing more than evidence of contracts.

The evidence covered by the second bill of exceptions was properly received.    That kind or class of evidence is constantly received, and although of itself it would not be very imposing, yet it tends in some degree to maintain the issue, and throw light on the subject, and may corroborate more direct testimony.

Judgment affirmed.